## The St. John.[1]

### Ferris v. The St. John, etc.

*(District Court, S. D. New York.  November 18, 1886.)*

1. Collision—Fog—Steamer Near Line of Piers—Speed—Ability to Stop.
   A large steamer has no right to run in a dense fog, near piers where boats usually tie up, except under such slow speed as to be capable of being fully stopped within the distance at which they can be seen.

2. Same—Statement of Case.
   Where the steamer St. John was going up the North river in a fog, within 100 or 200 feet of the line of the New York piers, and when about abreast of Piers 2 and 3 ran into libelant's barge, which was one of a tow hauled up in that place, where tows customarily make fast, *held*, that the St. John was solely liable for the damage.

In Admiralty.
*E. D. McCarthy*, for libelant.
*De Forest & Weeks*, for claimant.

Brown, J.   At about 11 o'clock in the morning of October 28, 1885, the steamer St. John, bound from Sandy Hook to pier No. 8, North river, when above the Narrows, encountered a thick fog.   In passing abreast of piers Nos. 2 and 3, North river, she ran into the libelant's barge, which was the outside boat in the head tier of a tow of some 12 or 15 boats, doing some damage, for which this suit is brought. The tow was upon a hawser about 40 feet long, and in charge of the steam-tug Skeer.   They had put in at Pier 2 about two hours before, in consequence of the thick fog.   The Skeer was made fast, heading down along the outer end of Pier 2, and the tow tailing up river with the strong flood-tide.

The pilot of the steamer estimates the distance at which they went outside of Pier 1 at about 100 feet; that they were going about five knots, by land, with the tide; and that the barge they struck was about 75 or 100 feet out in the river.   He says they ran along parallel with the shore, going very slow; that at Pier 1 the engines were stopped, and worked by hand; and that they backed as soon as the barge was seen, about 100 feet off, which was as far as it could be seen through the fog.   Whistles were heard from the tug indicating that it had a tow, before the tug or tow was seen.

A number of the witnesses testified that the tow was tailing at a large angle, some three or four points, out into the river, and that the flood-tide sets in that direction.   One witness states that the tide was already slack along the shore, and setting a little down.   But as both the libel and the answer state that the tide was strong flood, and all of the witnesses, save one, state the same, and as the almanac also gives

---

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

the time of high water at 11:40 in the forenoon, more than an hour and a half after this collision, I must hold that the witness last referred to is mistaken, and that the libelant's witnesses, who say that the tow tailed nearly straight up river, and was but a few feet outside of the line of Piers 2 and 3, are more probably correct. The tow was 60 feet wide. If, as the evidence indicates, the inner boat was some 20 or 30 feet distant from the pier, that would make the distance of the outer boat from 80 to 100 feet, which is the estimate of the pilot of the St. John of the distance of the barge he struck.

In that situation I cannot hold that there was any legal fault in the situation of the tow. It was a place where tows were accustomed to haul up. Under such circumstances, the tug had a right to go and remain there during the fog, and it was the duty of other vessels accordingly to take whatever precautions were necessary to keep away. As the tug is not a party defendant, no issue is presented whether or not she performed her whole duty in respect to signals, or in other respects, after putting in at this pier. The evidence shows, however, that she was sounding whistles, indicating that she had a tow there in her charge. The barge was without fault; and, as I must hold that she was rightfully where she was, it follows that the St. John must make good the damage, unless the accident can fairly be deemed inevitable, or without her fault. The circumstances do not warrant such a finding. *The Rockaway,* 25 Fed. Rep. 776. A steamer of the size of the St. John had no right to be going up river in a dense fog, within 100 or 200 feet of the ends of piers where it was not unusual for tows like this to tie up, except under such slow speed as to be capable of being fully stopped within the distance at which a tow could be seen. *The Nacoochee,* 28 Fed. Rep. 462. When she found that she had come within 100 feet of Pier 1, I think the steamer was bound to go further out into the stream, or take all the risk of proceeding so near to the shore. To reach her pier No. 8, she had yet a considerable distance to go. I am by no means insensible to the extreme difficulties that beset navigation in a dense fog; but as between a barge rightly moored at a customary place, and a steamer voluntarily proceeding close along the piers, the steamer, whose interest it is to continue her trips, must bear the loss that her enterprise, her speed, and the course that she selects, entail, rather than cast such loss upon an innocent third party, who is without fault.